FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

98 NOV 20 AM 8

U.S. DISTRICT CO
N.D. OF ALABAM

| | | |
|---|---|---|
| MICHAEL BRUCE TURNER, SR., | ] | |
| | ] | |
| Petitioner, | ] | |
| | ] | |
| vs. | ] | CIVIL ACTION NO. 98-B-1607-NE |
| | ] | |
| WARDEN TERRENCE McDONNELL and | ] | |
| THE ATTORNEY GENERAL FOR | ] | |
| THE STATE OF ALABAMA, | ] | |
| | ] | |
| Respondents. | ] | |

ENTERED

NOV 2 0 1998

## MEMORANDUM OF OPINION

On September, 10, 1998, the magistrate judge entered a report and recommendation, recommending that this action be dismissed because it is barred by the one-year statute of limitations set forth in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). The petitioner filed objections to the report and recommendation on September 18, 1998, arguing that it would be a miscarriage of justice for the court to refuse to hear the petitioner's claims. In support of his objections, Turner alleges that he is actually innocent of the crimes for which he was convicted and that the suspension clause of the Constitution requires that actual innocence of the crimes override the AEDPA's statute of limitations.

The Supreme Court has never addressed whether actual innocence is available to overcome the procedural bar of the one-year statute of limitations established by the AEDPA. However, even assuming that an actual innocence exception to the statute of limitations exists, the court finds that Turner has not made an adequate showing of actual innocence.

10

In *Schlup v. Delo*, 130 L. Ed. 2d 808 (1995), the Supreme Court elaborated on the fundamental miscarriage of justice exception and the necessity of showing innocence. To meet this exception, the petitioner "must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup*, 130 L. Ed. 2d at 836. The standard focuses on the *actual* innocence of the petitioner. As the Supreme Court explained:

> Instead, the emphasis on "actual innocence" allows the reviewing tribunal also to consider the probative force of relevant evidence that was either excluded or unavailable at trial. Indeed, with respect to this aspect of the *Carrier* standard, we believe that Judge Friendly's description of the inquiry is appropriate: the habeas court must make its determination concerning the petitioner's innocence "in light of all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongfully excluded or to have become available only after trial."

*Id.* at 836-37 (*Quoting* Friendly, *Is Innocence Irrelevant? Collateral Attack on Judgment*, 38 U.Chi.L.Rev. 142, 160 (1970)).

In his objections, the petitioner does nothing more than make a conclusory allegation that he is actually innocent of the crimes for which he was convicted. He offers nothing in the objections to support this conclusion. The petitioner did argue in his petition that he had newly discovered evidence that one of his victims had recanted his trial testimony.[1] This evidence, however, is hardly "new" as the petitioner claims. The petitioner raised the claim in a motion for new trial, on direct appeal, and in his Rule 32 petition. The trial court held a hearing on the motion for a new trial, at which the victims testified. In affirming the

---

[1] The petitioner was convicted of first degree sodomy, first degree sexual abuse, and second degree sexual abuse. The victims were his teenage sons.

2

petitioner's conviction on this ground, the Alabama Court of Criminal Appeals found as follows:

> The record reflects that the appellant, through new appellate counsel, filed a motion for a new trial wherein he alleged that newly discovered evidence entitled him to a new trial. Specifically, the appellant maintained that he was entitled to a new trial because D.T. had subsequently recanted his accusations against him and because, he said, he had evidence that A.T. was also lying about the accusations against him.
>
> A hearing was held on the motion for a new trial. At the hearing, D.T. testified that his father had never sexually abused him. He stated that his stepfather had coached him for two years about what to say and that his stepfather had also encouraged him to say that his father had a gun during the incidents. D.T. admitted that he never told the district attorney that he had been coached. When asked why he had lied during the trial, D.T. responded that his brother had said something about having been being sexually abused so he said that it had happened to him also. D.T. maintained that his stepfather encouraged him to say that a gun was used because, he said, his stepfather and mother were trying to get one-half of his father's business.
>
> On cross-examination, D.T. admitted that he had talked to Jo Hanson, with the Department of Human Resources, and that he had told her that his father had sexually assaulted him. He admitted that he initially told his mother and stepfather that he had been sexually assaulted and that they did not come to him and tell him to fabricate the story.
>
> On redirect, D.T. indicated that when he initially said that his father had molested him, he was angry with his father. On re-cross, D.T. testified that he and A.T. had concocted the story against their father.
>
> The trial court questioned D.T. and specifically asked him why he would make up a story against his father. D.T. indicated that he did not know, but thought that he might have done it to get back at his father because his father took him to live with his mother.
>
> M.T., the oldest brother, also testified at the hearing on the motion for new trial. He stated that he had recently talked with A.T., the other victim of the crime, about their father's conviction. According to M.T., A.T. told him that he had lied in the courtroom. He testified that A.T. said that he had lied because of pressure from his mother, his stepfather, and D.T. M.T. maintained that A.T. was very easily influenced due to his mental deficiencies.
>
> At the conclusion of the hearing, the trial court denied the motion for a new trial with an extensive explanation. (S.R.36-40.) In sum, the trial court indicated that it did not find D.T.'s testimony in the new trial hearing to be credible. The trial court was not satisfied with D.T.'s explanation of why he had lied in the trial.

3

> . . .
> The trial court did not abuse its discretion in denying the motion for a new trial. The trial court carefully considered D.T.'s testimony at the trial and at the hearing on the motion for a new trial and did not find his testimony at the new trial hearing to be credible. The trial court was in the best position to assess D.T.'s credibility regarding his conflicting stories. Moreover, A.T.'s testimony, which tended to corroborate D.T.'s trial testimony, was still before the Court for its consideration, as well as Jo Hanson's trial testimony. Accordingly, we can find no abuse of discretion in the trial court's denial of the motion for a new trial.

*M. T., Sr. v. State*, 677 So. 2d 1223, 1229-31 (Ala. Crim. App. 1995)(footnote omitted).

Because the Alabama Court of Criminal Appeals adjudicated the petitioner's "newly discovered evidence" claim on the merits, this court is bound by that court's findings, unless the petitioner can establish that the Alabama Court of Criminal Appeals' adjudication of the claims "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)and (2). *See Neelley v. Nagle*, 138 F.3d 917 (11th Cir. 1998); *Schlager v. Washington*, 113 F.3d 763, 768 (7th Cir. 1997); *Hodges v. Hawes*, 955 F. Supp. 958, 964 (N.D. Ill. 1997). The petitioner has not established that the Court of Appeals' adjudication of the claims resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Therefore, this court is bound by the state court's finding that the petitioner's "newly discovered evidence" claim is without merit.

4

Accordingly, the petitioner's newly discovered evidence claim is insufficient to establish that he is actually innocent. Therefore, even assuming that actual innocence can override the statute of limitations, the petitioner is still barred by the statute of limitations.

The court has considered the entire file in this action together with the Magistrate Judge's Report and Recommendation and the objections of the petitioner and has reached an independent conclusion that the Magistrate Judge's Report and Recommendation is due to be adopted and approved. The court hereby adopts and approves the findings and recommendation of the magistrate judge as the findings and conclusions of the court. In accord with the recommendation, this petition for writ of habeas corpus is due to be DISMISSED. An appropriate order will be entered.

DONE this 19th day of November, 1998.

SHARON LOVELACE BLACKBURN
UNITED STATES DISTRICT JUDGE